UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL A. ONDEK

v.

SHEYL M. RANATZA, CHAIRPERSON
FOR THE BOARD OF PARDONS AND
COMMITTEE ON PAROLE, ET AL.

CIVIL ACTION

NO. 16-725-JWD-RLB

# RULING AND ORDER

This matter comes before the Court on the *Motion for Summary Judgment* filed by Defendants the Louisiana Department of Public Safety and Corrections ("the DOC") and James M. Leblanc, Secretary of the DOC ("Mr. Leblanc"). (Doc. 24.) Plaintiff Michael A. Ondek ("Mr. Ondek") opposes this motion. (Docs. 28, 33.) Defendants filed a reply memorandum in support of their motion. (Doc. 29.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is **GRANTED**.

## I. Factual Background

Mr. Ondek is an inmate in the custody of the DOC, serving a life sentence for Second Degree Murder. (Doc. 24-2 at 1.) This conviction renders Mr. Ondek ineligible for diminution of sentence and parole, leaving his only avenue for release from custody a pardon or commutation granted by the Governor. (*Id* at 1-2.) On November 2, 2015, the Louisiana Board of Pardons ("the Board") unanimously voted to deny Mr. Ondek's request for clemency. (*Id* at 2.) Upon this denial, Mr. Ondek filed the instant law suit pursuant to 42 U.S.C. §1983, claiming Defendants

violated his constitutional rights by failing to properly supervise and train the Board. (*Id.*)[1] It is uncontested that Mr. Odnek failed to submit these claims through the DOC's administrative grievance procedure prior to filing the instant suit. (Doc. 28 at 2.)

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citations omitted). The nonmover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

---

[1] In support of his claims, Mr. Ondek elaborates on the information introduced at the hearing in which the Board considered his application for pardon. (Doc. 28 at 2.) Mr. Ondek contends that persons associated with the deceased victim's family and law enforcement officers expressed opposition to plaintiff's application. (*Id.*) Mr. Ondek asserts that, despite the fact that he introduced information concerning "his previous social history and criminal record; his conduct, employment, attitude in prison; his participation in vocational training, adult education, literacy, or reading programs; and his physical, mental and psychiatric condition," the Board did not give any of this information serious consideration and denied his request for clemency on the sole basis of the opposition testimony. (*Id.*)

### III. Discussion

#### A. Parties' arguments

##### 1. Defendants' Memorandum in Support of its Motion for Summary Judgment (Doc. 24-1)

Defendants, Mr. Leblanc and the DOC, assert that the Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust administrative remedies before filing a law suit with respect to prison conditions under 42 U.S.C. § 1983. (Doc. 24-1 at 2 (citing 42 U.S.C. §1997e(a); *Richardson v. Suprlock*, 260 F.3d 495 (5th Cir. 2001).)) Based on this requirement, Defendants argue Mr. Ondek's claims against them alleging their failure to supervise and train the Board must be dismissed because Plaintiff brought this lawsuit without first exhausting his claims through the Administrative Remedy Procedure ("ARP"). (*Id.* at 1.)[2] Defendants contend that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. (*Id.* (*citing Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 992 (2002).)) Defendants argue that because "[a]ctions by prison officials are precisely the reason for the grievance procedure," Mr. Odnek's claims against them concerning the alleged negligent action of prison officials must be dismissed. (*Id* at 5.)

##### 2. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 28)

Mr. Ondek concedes that he did not seek any form of administrative remedy before filing the instant law suit against Defendants, but he argues Defendants reliance on the PLRA is misplaced because his complaint is not about prison conditions or an aspect of prison life. (Doc.

---

[2] Defendants attached a copy of the ARP to their memorandum in support. (*See* Docs. 24-5; 24-6.)

28 at 3.) Mr. Ondek distinguishes his case from those cited by Defendants in support of their motion, arguing those cases involved either inmate complaints about damages that were allegedly sustained in connection with some aspect of prison life or challenges to the fact or the length of an inmate's confinement, while his case involves a challenge to "the Board's fairness in executing its statutory duties, powers, and procedures, the Board's adherence to the evidence-based principles by which the Board states it is guided, and the adequacy and propriety of LeBlanc and DOC's supervision and training of the Board to guard against constitutional violations." (*Id.* at 3-7.) Mr. Ondek argues Defendants' position is meritless because there is no requirement to exhaust administrative remedies for a claim that does not involve prison life or prison conditions. (*Id.* at 3.)

### 3. Defendants' Reply Brief in Support of its Motion for Summary Judgment (Doc. 29)

Defendants "reassert that they are entitled to summary judgment as a matter of law, as this matter unquestionably involves the actions of prison officials; thus, this is an inmate suit about 'prison life.'" (Doc. 29 at 1.) Defendants aver that while Mr. Ondek asserts that his claims against Defendants do not involve an aspect of prison life, he fails to offer any argument as to why he believes this to be so. Defendants reiterate that they take plaintiff's claims against them at face value and argue that Mr. Ondek's claims necessarily involve prison life: "Ondek alleges that LeBlanc's and DOC's actions in improperly training the parole board have somehow caused a constitutional violation. But for plaintiff's incarceration and his life in prison, he would not be subjected to these actions by prison officials." (*Id.* at 2.) Further, Defendants contend that other federal circuits have considered this same issue:

> these Courts have held that § 1983 claims regarding decisions of the parole
> board, and parole board policies and procedures are subject [to] the exhaustion

> requirement of the PLRA. See *Martin v. Iowa*, 752 F.3d 725 (8th Cir.2014) (a challenge to parole procedures is a civil action with respect to prison conditions within the meaning of the PLRA, and a prisoner must exhaust administrative remedies); *Owens v. Robinson*, 356 Fed.Appx. 904 (8th Cir.2009) (affirming dismissal of challenge to Iowa's parole review procedure for failure to exhaust administrative remedies); and *Castano v. Neb. Dep't of Corr.*, 201 F.3d 1023, 1024-25 (8th Cir.2000) (defendants' failure to provide qualified interpreters at disciplinary hearings and institutional programs bearing on parole eligibility was subject to exhaustion requirements).

(*Id.* at 2-3.) In conclusion, Defendants stress "but for plaintiff's confinement in prison, he could not be subject to actions by defendants that might result in a constitutional violation." (*Id.* at 3)

### 4. Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 33)

In Mr. Ondek's Supplemental Memorandum in Opposition, he offers an additional argument in opposition to Defendants' motion based on the premise that, under the PLRA, a prisoner is not required to exhaust administrative remedies that do not exist. (Doc. 33 at 2.) Mr. Odnek argues that the remedy he seeks is not available under the ARP. (*Id.*) In support of this argument, Mr. Ondek cites a provision of the ARP that provides: "…[t]he following matters shall not be appealable through this Administrative Remedy Procedure:… Board of Pardons and Parole decisions (under Louisiana Law, these decisions are discretionary and may not be challenged.)" (*Id.* (citing Doc. 24-6 at 5.)) Mr. Odnek asserts that, because "his supervision and training claim is tantamount to an appeal of the Board's pardon decision," it falls under this provision of the ARP. (*Id.*) Plaintiff reiterates his argument that his claim against Defendants does not involve prison life or prison conditions and states "it is noteworthy that the [ARP] also apparently rejects the notion that a Board decision involves an aspect of prison life or prison condition." (*Id.* at 3.) Mr. Odnek avers that in situations like this, "[i]n the absence of an

5

administrative remedy and in the absence of a complaint seeking judicial relief as to prison conditions or an aspect of prison life, plaintiff is not required to file a grievance before filing his law suit." (*Id.*)

### B. Analysis

The Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The question here is whether Mr. Ondek's § 1983 claims alleging Defendants inadequately and improperly supervised and trained the Board and Committee on Parole ("the Board") with respect to the Board's consideration of his pardon application is an action "with respect to prison conditions" under § 1997e(a).

Given Congress' failure to define "prison conditions" in the text of the PLRA exhaustion provision, the Supreme Court defined the scope of that term in *Porter v. Nussle*, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).[3] The Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532. Applying *Porter*'s broad interpretation of prison conditions, the Fifth Circuit has determined an action with respect to prison conditions to include suits involving challenges to conditions of confinement and failure to protect claims in addition to those involving excessive force claims. *See Moore v. St. Tammany Par. Jail*, 113 F. App'x. 585, 586 (5th

---

[3] The Supreme Court acknowledged that another provision of the PLRA, 18 U.S.C. § 3626(g)(2), which concerns prospective relief, defines "prison conditions" to mean "the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." *Porter,* 534 U.S. at 523, n. 2-3. However, it is uncertain whether it is proper to import § 3626(g)(2)'s definition of "civil actions brought with respect to prison conditions" into 42 U.S.C. § 1997e(a), as the Court ultimately concluded, "we rest our decision on the meaning of 'prison conditions' in the context of § 1997e, and express no definitive opinion on the proper reading of § 3626(g)(2)." *Id.*, n. 3.

6

Cir.2004)(holding that pretrial detainee who brought civil rights action challenging the conditions of his confinement was required to first exhaust administrative remedies); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002)("*Porter* squarely precludes Clifford's contention that his failure-to-protect claim is outside § 1997e(a)'s scope.") Mr. Odnek attempts to distinguish this case from those involving conditions of confinement that fall within the exhaustion provision by arguing he is not challenging the fact or length of his confinement but the adequacy of Defendants' supervision and training of the Board. (Doc. 28 at 7.)

The Fifth Circuit has yet to consider the narrow issue of whether § 1983 claims brought by inmates alleging inadequate training and supervision of the Board with respect to consideration of pardon applications are actions "with respect to prison conditions" under § 1997e(a). However, the Fifth Circuit has held that § 1983 claims alleging failure to train deputies on ways to protect pretrial detainees are actions with respect to prison conditions under § 1997e(a). *See Hicks v. Lingle*, 370 F. App'x 497, 498 (5th Cir. 2010) (dismissing an inmate's § 1983 claim alleging prison officials failed to train deputies on ways to protect pretrial detainees because he did not exhaust administrative remedies.) This Court has also considered failure to train and/or supervise claims brought by inmates and concluded that they were subject to the exhaustion requirement. *See Evans v. Butler*, No. CIV.A.09-159-RET-DLD, 2010 WL 2401761, at *1 (M.D. La. Mar. 18, 2010) (Dalby, Mag.), *report and recommendation adopted*, No. CIV.A. 09-159-C, 2010 WL 2521013 (M.D. La. June 10, 2010) (1983) (Tyson, C.J.)(dismissing an inmate's failure to train and/or supervise claim against Defendant in the instant case, Leblanc, among other officials for failing to exhaust all administrative remedies); *Pea v. Cain*, No. CIV.A. 12-779-SDD, 2013 WL 3490829, at *2 (M.D. La. July 10, 2013) (Dick, J.) (concluding that

plaintiff's claim alleging failure to train and/or supervise correctional officers was subject to dismissal for plaintiff's failure to exhaust administrative remedies.)

Although neither this Court nor the Fifth Circuit has considered the application the PLRA exhaustion requirement within the context of parole procedure challenges, other federal courts have. While these decisions are not binding on this Court, they are persuasive. Defendants cite cases from the Eighth Circuit holding that §1983 claims challenging decisions of the parole board and parole board policies and procedures are subject to the exhaustion requirement of the PLRA. *See Martin v. Iowa*, 752 F.3d 725 (8th Cir.2014)(a challenge to the Parole procedures is a civil action with respect to prison conditions within the meaning of the PLRA and a prisoner must exhaust administrative remedies); *Castano v. Neb. Dep't of Corr.*, 201 F.3d 1023, 1024–25 (8th Cir.2000)(holding a § 1983 action alleging defendants' failure to provide qualified interpreters at disciplinary hearings and institutional programs bearing on eligibility of parole was subject to exhaustion requirements of § 1997e(a).) Other federal circuits have also suggested that claims by inmates involving challenges to parole board decisions and procedures are subject to the exhaustion provision of the PLRA. *Jones v. Douglas*, 108 F. App'x. 254, 2004 WL 1770602 (6th Cir. 2004) (unpublished)(affirming dismissal of inmate's claim alleging his rights under Due Process Clause were violated when he was placed in administrative segregation and thus precluded from receiving scheduled parole hearing and future hearings due to inmate's failure to exhaust remedies under PLRA); *Jones v. Maher*, 131 F. App'x. 813, 2005 WL 1155914 (3rd Cir. 2005)(unpublished)(affirming dismissal of inmate's claims that he was subjected to discriminatory parole consideration and retaliatory conduct due to inmate's failure to exhaust remedies under PLRA); *Moran v. Sondalle*, 218 F.3d 647, 652 (7th Cir. 2000) (stating in

dicta that § 1983 attack on the procedures used to deny inmate's application for parole was subject to PLRA's exhaustion requirements.)

In light of the foregoing, the Court holds that Mr. Ondek's § 1983 claims alleging Defendants inadequately supervised and trained the Board with respect to the Board's consideration of his pardon application are claims "with respect to prison conditions" as contemplated by § 1997e(a) of the PLRA. This holding is consistent with *Porter*'s broad reading of "prison conditions" and the case law applying it. Notwithstanding this holding, Mr. Odnek's claims against Defendants may yet be viable. That is because, under the PLRA, a prisoner need exhaust only "available" administrative remedies. *Ross v. Blake*, 136 S. Ct. 1850, 1856, 195 L.Ed.2d 117 (2016). Therefore, Mr. Odnek's contention that there were no available administrative remedies for him to exhaust warrants further consideration.

In *Ross*, the Supreme Court held that the PLRA contains its own textual exception to the exhaustion requirement, explaining that under § 1997e(a) an inmate's obligation to exhaust hinges on the "availability" of administrative remedies. *Id* at 1858. "A prisoner is thus required to exhaust only those grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (citing *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819.) The Court noted three circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief and thus an inmate's duty to exhaust "available" remedies does not come into play:

> First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

9

*Id.* at 1859-60.

Louisiana's prisoner grievance system is described in the state's Administrative Code. It explicitly lists matters that are not appealable through the Administrative Remedy Procedure ("ARP") process, providing:

> iv. The following matters shall not be appealable through this administrative remedy procedure:
> (a). court decisions and pending criminal matters over which the department has no control or jurisdiction;
> **(b). Board of Pardons and Parole decisions (under Louisiana law, these decisions are discretionary and may not be challenged);**
> (c). sex offender assessment panel recommendations;
> (d). lockdown review board decisions (offenders are furnished written reasons at the time this decision is made as to why they are not being released from lockdown, if that is the case. The board's decision may not be challenged. However, a request for administrative remedy on lockdown review board hearings can be made in the following instances)

La. Admin. Code tit. 22 Pt. I, § 325(F)(3)(a)(iv)(emphasis added). Applying *Ross*, it follows that the matters that are included in this list and therefore barred from the Louisiana ARP process are not subject to the mandatory exhaustion requirement of the PLRA because they are not available. Mr. Odnek avers that there was no administrative remedy available for his claims against Defendants, arguing § 325(F)(3)(a)(iv)(b) of Louisiana's Administrative Code prevents inmates from appealing the Board's decision on a pardon application even where here, that appeal is based on a claim of inadequate and improper supervision and training of the Board.

Mr. Odnek's reliance on § 325(F)(3)(a)(iv)(b) of Louisiana's Administrative Code is amiss. Mr. Odnek's claims against Defendants herein—the DOC and Mr. Leblanc—are not equivalent to an appeal of the Board's decision to deny his pardon application.[4] Instead, Mr.

---
[4] Defendants DOC and Mr. Leblanc are not members of the Board that made the decision to deny his application for pardon. While Mr. Odnek also brings this law suit against Sheyl M. Ranatza, who is chairperson of the Board, she is not party to the instant motion. Accordingly, this ruling does not decide whether or not his claims against Ranatza is an appeal of the Board's decisions.

10

Odnek § 1983 claims against Defendants allege they failed to adequately train and supervise the Board in making their decision, which is not included in the list of matters that are barred from the ARP process. Furthermore, Mr. Odnek has not presented an argument or plead any facts suggesting that this case falls within the purview of any of the three circumstances that would merit a finding that administrative procedures were unavailable to him despite the fact that they are on the books. Therefore, Mr. Odnek's claims against Defendants does not fit within the PLRA's textual exception to mandatory exhaustion under § 1997e(a) and must be dismissed for failure to exhaust.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 24) filed by Defendants the Louisiana Department of Public Safety and Corrections and James M. Leblanc is **GRANTED**. Plaintiff's claims against Defendants the Louisiana Department of Public Safety and Corrections and James M. Leblanc are hereby **DISMISSED WITHOUT PREJUDICE.**

Signed in Baton Rouge, Louisiana, on March 16, 2018.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**